We have this morning four cases, and the first case is numbers 20-1061, 1062, and 1063, In Re Venoco LLC, Davis-Fee State of California and California Lands Commission. And we have Mr. Rosenthal and Mr. Reich on one side, and Mr. Harris on the other. Mr. Rosenthal, the first question, we've expanded the time from this from 15 minutes to 20 minutes for our argument. How much of that time do you wish to allocate to you for the commission's argument, and how much time for Mr. Reich for the State of California argument? There would be 10 minutes of opening. I'm sorry, 15 minutes of opening. Mr. Reich will have two minutes, Your Honor, and then I'll have three minutes in rebuttal. Sounds great. Okay. Yes, sir. Is the court ready? Yes, sir. May it please the court, I'm Steve Rosenthal, lobe and lobe, and I'm speaking on behalf of the California State Lands Commission. Let me begin with... So, let me just get some facts out of the way. Sure. So, in 17, April 17, there was a bankruptcy filing. Yes. And there was a temporary services agreement with both the on and offshore facilities, and then later replaced by, a few months later, by a gap agreement. Yes. In which the commission and Vinoco agreed that the commission would pay $1,000 per month to Vinoco as a debtor with respect to... A larger amount than 1,000, Your Honor. How much? A larger amount. It's $100,000. $100,000. I meant $100,000. Excuse me. No problem. And so... You want to be a member of Congress if you can't tell the difference. Once you have a Durson line, a billion here, a billion there, and sooner or later, it's real money. A month after that, you filed a contingent claim and then filed a proof of claim somewhere between $29 and $35 million. And once the plan was confirmed, and I guess went effective in October of 18, when Mr. Davis came in as the liquidating trustee, there was nonpayment, he claimed, beforehand, and therefore he filed a suit almost the very next day. And you're saying somehow that under Katz, you still have sovereign immunity. Is that correct? No, Your Honor. I think you've misunderstood. The suit that was filed had nothing to do with the GAAP agreement whatsoever. No, no, the suit that was filed was an inverse condemnation suit, right? Right. But it only related, Your Honor, to our presence on the EOF starting October 15, after it had nothing to do with the GAAP agreement. Nothing to do with the GAAP agreement. This relates only to events that began on October 15 after the GAAP agreement was terminated. That's a very important point. Understood. Good. So what's your proposed test for whether a proceeding is ancillary to the bankruptcy court's in-rim jurisdiction? Okay. Basically, our position is that a matter is ancillary if it, we're talking now post-confirmation. We're proposing to use basically the same test that this court used in Resorts International, which was there has to be a close nexus to the proceeding or plan. It's not just sufficient, as you said in Resorts International, that there be a potential increase in the assets of the trust. It has to be intimately tied to one of the three central elements of a bankruptcy. It has to be intimately tied to the gathering of assets, to the resolution of the various who gets what, and to the third aspect, the giving of a release. And this claim is not intimately tied to any of those three. This is a claim entirely for events that are post-confirmation. And I would remind the court that in Resorts International, that demarcation is of critical importance. Remember, as you said, in Resorts International, before confirmation, the PAC Court test applied, just the claim has to have just some rational relationship. But afterwards, it has to have a very high standard. It has to be, it requires a close nexus. And in Resorts International, Your Honor, the malpractice claim in that case did not have the close nexus. But the argument here is that the adversary proceeding is not an exercise of in-rem jurisdiction because the claims arose post-confirmation. Yes. And so you're saying after confirmation, the property is no longer the debtor, so there's no race. Right. And that's a holding, Your Honor. That's a holding of Nordic. Let me just see. Well, Nordic is from 1992. I mean, it's only one since then. Is it not possible for the assets that were the bankruptcy estate to continue to be part of the bankruptcy estate after the confirmation, if that is the type of arrangement that is envisioned by the plan? No, Your Honor. I think that runs directly counter to what this court said in Resorts International. Let me quote what you said. At the most literal level, it is impossible for the bankruptcy debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once the confirmation has occurred. This is exactly what happened in Resorts International. Whatever language may be in the plan, that can't extend the jurisdiction of the court. And this court made clear, plan language doesn't give the court any jurisdiction over the claim. You now are in post-confirmation land, post-liquidation land, and completely different tests apply. But are there not cases that have considered that the estate assets have continued to be part of the estate after the confirmation of the plan, depending upon the terms of the plan? I don't believe, Your Honor, that's the law of the Third Circuit. Let it be the law of the Third Circuit. But, Your Honor, I think there is a very clear demarcation here between pre-confirmation and post-confirmation. Moreover, that's one element, one leg of our plan. But the other point, the other reason we intend that there is an enormous difference in this case from other cases is that this is a claim for monetary relief. And that type of claim, put to one side some claim which, like was involved in Katz, which was a preference, dealing with preferences. A claim for monetary relief stands at the very epicenter of sovereign immunity. I was going to point out that the Supreme Court in Hans, which is the fountainhead of 11th Amendment jurisdiction, quotes Federalist 81 by saying that the Constitution was intended, if it was intended for anything, it was not— We're way beyond Hans. And if you were a textualist, Hans wouldn't be around, but so be it. Let's deal with resorts and then let's go to the follow-up to Katz, which is the dicta in the recent Supreme Court decision in Allen. In resorts, we talked about there is certain related to jurisdiction post-confirmation as to whether there's a close nexus to the plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter. The plans liquidation analysis explicitly discusses the onshore EOF facility. And it seems— I would— —gave up sovereign immunity in connection with bankruptcy matters. And you can say it's dicta, but it says, quote, in bankruptcy, we decided sovereign immunity has no place. I could read a bunch of other quotes from Justice Kagan in that case. And so it seems, at least as to the commission, that you're fighting over an inverse condemnation action, which arguably is seeking money as opposed to anything else, but it relates to something that the plan deals with. How do I get around that? First of all, we deny the premise here. We think that the brief misstates—Davis' brief misstates what the plan provides for. They say that it requires agreement to convey the EOF and that it dealt with this whole issue. It did not. It cites to page 524 and 525, which is not a plan requirement. It is simply a description of the GAAP agreement. The plan doesn't provide for anything other than the transfer of the EOF to the trust and the granting of authority to dispose without any further court approval. There is not, Your Honor, and I would emphasize that to the court, there is not this intimate connection that this is all based on between the plan and this claim. The plan doesn't provide for that. With respect to the second half of your question, which I did not want to ignore, the statements are what the statements are in Judge Kagan's decision, but we contend you have to go back and actually read Katz. What Katz says is that the waiver, the abrogation, is limited. It's limited to matters which are ancillary to one of the three components of the bankruptcy. We contend, Your Honor, that this is not ancillary. This is not ancillary to the gathering up of assets, to the determination of various claims, or to the fresh start. This is a separate and distinct matter. How do I get around the statements? It's a nine to nothing decision in Allen. I realize, yes, it relates to another matter entirely, but it says in bankruptcy we decided sovereign immunity has no place. I've mentioned that. Everything in Katz is about and limited to the bankruptcy clause. The opinion reflects what might be called bankruptcy exceptionalism. In part, Katz represented on the singular nature of bankruptcy jurisdiction. Next page. It was sui generis bankruptcy clause, unique among Article I grants of authority. Relying on the above account of the framers' intentions, the court found that the bankruptcy clause itself did the abrogating. Or stated another way, we decided that no congressional abrogation was needed because the states had already agreed in the plan of the convention not to assert any sovereign immunity defense in bankruptcy proceedings. Bankruptcy is on a different plane. How do I get around that? I don't think you have to get around it. To be very frank, the question there is, what is bankruptcy? I mean, there's a definitional question. I think all of what Judge Kagan said probably is correct. The question is, does bankruptcy It's not probably correct. It has to be correct because they said it. Well, what I meant to say, Your Honor, is I wasn't quibbling. They're infallible because they get the final word, and that's the final word. Yes, we understand that's the final word. But the essence of our position is that bankruptcy, as the court said in Katz, just because the word bankruptcy is attached to it doesn't make it bankruptcy within the meaning of the clause. And I'm positive that Judge Kagan, or at least I would contend, that Judge Kagan didn't have in mind all of the nuances of what constituted a bankruptcy matter. And basically, this almost becomes an Ipsy Dixit, that if the bankruptcy court says, I'm going to rule on it, it becomes within the clause. The clause has an independent scope, and that scope was discussed not in Connolly, but in the earlier case. You filed a proof of claim in October of 17. Right. So usually, if one files a proof of claim, you're waiving sovereign immunity. Well. If there's no waiver, wouldn't you have your cake kneaded, too? You can assert claims against Binocco for plugging and decommissioning activities, but pay nothing for your use of Binocco's property. Your Honor, that is governed by statute, and the statute is quite clear that there are two requirements. My point to you is, how can you file a proof of claim, let's say you get paid on that, and yet if somebody has a claim against you, then there's no offset? Well, there won't be any offset here in any event. One claim will not offset the other. The claim they're making is for real dollars. Our claim will only be paid in bankruptcy dollars. This claim, the answer is that they don't have the requisite overlap. But more importantly, 106B, Your Honor, the statute says that the claim has to be a claim of the bankruptcy estate. Whatever you think about my argument otherwise, the one thing that this court did hold in Resorts International is that there was no estate after the liquidation. And therefore, this claim, which relates only post-liquidation, doesn't come within the square terms of it. We also said in Resorts that you don't apply the effect of the bankruptcy estate test so literally as to entirely bar post-confirmation bankruptcy jurisdiction. That's correct. And the way you implemented that was saying that there is a different test. And the different test is the close nexus test. You clearly upheld post-confirmation, but it's different from PACCOR doesn't apply. So you drew a line. This court drew a line. And this claim by statute is not, there was no waiver by statute. I'll put to one side the whole issue of the claims, the substance of the claims. Our claim was for the cap and abandonment. Their claim was for use of the property, use of the EOF. They don't overlap. You don't have to decide one to decide the other. And in any event, that claim doesn't have the intimacy, the intimate connection that is required under the test in Resorts International. We're not trying to have our cake and eat it too. We filed the claim. This claim, we contend, is entirely separate and distinct from what we were claiming about. Remember, the test, and I would point out to your honors, that the test for relinquishment of a constitutional right is clear and unmistakable. And a lot of this is kind of catch you on the part of the state. It's one thing to say that our claim will be adjudicated within the context of the proceeding. And that anything that flows from that claim, it's quite a different thing for this state to have consented to an inverse condemnation claim in bankruptcy court. There is no example, and I underscore this, there is no example of a bankruptcy court, even during a bankruptcy proceeding, hearing an inverse condemnation claim, much less after confirmation. Therefore, if you were to decide this case and the penumbra around it, you're not going to be interfering with basic bankruptcy court jurisdiction. This is not a cat's case. Thank you very much. We'll hear from Mr. Reish, and we'll get you back on rebuttal. Thank you. Thank you. Let me just note for the clerk's office, I did not have a video of that argument. I saw, I got other counsel who was sitting quietly and silently. So if you can arrange it so that I can see who's talking, I'd appreciate it. Judge, if you click on gallery view. I did. And I get four pictures. I'm sorry, Judge Roth, you didn't get to see me. Yeah, right. Well, I am too. What you could do is just take me off and add Mr. Rosenthal in. Your Honor, would you like me to proceed? Mr. Reish, Judge Roth, are you okay to proceed now? Yeah, because I think I see Mr. Reish. Okay, thank you very much. Mr. Reish, whenever you're ready. May it please the court, Mitchell Reish, Deputy Attorney General for the appellant, State of California. If this court finds that the State Lands Commission is immune from suit under the 11th Amendment, then the court need inquire no further. However, even if this court finds that the commission has waived or is otherwise not entitled to the 11th Amendment, 11th Amendment immunity, the state, as a separate and distinct legal entity, nevertheless retains immunity such that this case should be dismissed, at least as respect to the state. Waivers of 11th Amendment immunity are to be narrowly construed, and here the liquidating trustee's complaint alleges no action by the state to expressly and unequivocally waive the 11th Amendment. The commission is what, an arm of the state? That is correct, Your Honor. So why can't the commission waive sovereign immunity for you? Because the commission in this instance was acting pursuant to its statutory grant of authority under the Public Resources Code, in which the commission was granted exclusive jurisdiction to manage public trust lands, and it exercised its authority pursuant to that grant of authority. And under the controlling authority that waivers are to be narrowly construed, the waiver only extended to the commission's actions in this case. How is it equitable for the state and the commission to share in immunity? That is, that the commission claims its immunity flows from the state, but not liability. Well, I would disagree with the premise that the state and the State Lands Commission share immunity. They each derive their immunity from the 11th Amendment, but while the trustee makes that argument, he cites no legal authority. Well, the commission's immunity has to flow from the state, does it not? If it doesn't flow from the state, then there isn't even a question of immunity. It flows from its, it is a governmental unit of the state, that is correct, Your Honor. But it nevertheless exercised in this instance its exclusive jurisdiction. I would note that in this case that the trustee has dealt exclusively with the commission as a separate entity. All actions that it took were with the commission, and that it negotiated for the purchase of the El Vedantro facility with the commission. There simply has been no action by the state, and when the state, when an arm of the state exercises its authority pursuant to its statutory grant of authority, it is our position that any waiver would extend only to those actions and only by that agency. Do my colleagues have any other questions for California's counsel? No. I'd like to hear how these two types of sovereign immunity can exist at the same time. I'm not sure I understand the question. Two sovereign, there wouldn't be two sovereign immunities. It's simply what one, there's two defendants here. They each, they were, and there's no, if there's a waiver, it was only by one agency or by the arm of the state. In this case, the commission. I'm sorry, Your Honor. I'm not sure I understand the question. That's okay. Okay. And thank you, Your Honors. We'll hear from Mr. Harris then, and then we'll get Mr. Rosenthal back in rebuttal. May it please the court. My name is Warren Harris. I represent the Apple League. The commission actively avails itself of the bankruptcy court's jurisdiction, having filed a proof of claim asserting $130 million against the trust assets, while at the same time disputing litigation related to the very same assets under a claim of sovereign immunity. Was the proof of claim, it seemed to me there was an issue as to how much was the proof of claim. Was it 130 or somewhere between 29 and 35? The proof of claim itself was 130, Your Honor, and there are several subparts to that, and they are at the joint appendix, page 705. There was a separate proof of claim filed as part of the reservation, and that was for $19.2 million. So the reservation included also had a proof of claim that was filed, and that's for $19.2. But the commission's proof of claim was for $130 million. OK, it was the 29 to 35 was for the onshore facility specifically, is that correct? Yes, Your Honor. That's item two. That's for operating operation and maintenance of the platform, Holly, and the EOF. That's $29 to $35 million. That's one line of the $130 million. I'm going to ask you the first question I asked of Mr. Rosenthal. What's your proposed test for whether a proceeding is ancillary to the bankruptcy court's interim jurisdiction? Well, the court in Katz stated the three critical features and said that the proceeding has to relate to one of those functions in order to effectuate the interim jurisdiction. So I believe that's the test that's set out in Katz is whether the proceeding relates to one of those functions. And here the trustee's adversary proceeding meets at least two of those functions, turning first to the second function, which is the equitable distribution of that property among the debtor's creditors. Pursuing the inverse condemnation claim is necessary to have an equitable distribution of the assets among the creditors who are now the beneficiaries of the trust. And the plan acknowledges this. The plan says that the commission's valuable occupancy and use of the EOF and the necessity of reaching an agreement regarding the EOF and said that this needs to be done before distribution could be made to resolve the commission's proof of claim. As the plan sets out, the disposition of the EOF is part of an overall resolution of the claims of the commission's claim against Vinico. And that satisfies the second factor in Katz. And as a result, Katz precludes the appellants from asserting sovereign immunity. And what was the second one? You said there were three features and two of them unique. Yes, Your Honor. The other is the first feature, which is the exercise of exclusive jurisdiction over all the debtor's property. The adversary proceeding here assists the bankruptcy court in the exercise of the exclusive jurisdiction over the property. The trustee seeks compensation for an important debtor asset, which is the EOF that's now in the hands of one creditor, the commission. And the key purpose of the adversary proceeding is to prohibit a creditor from taking the valuable asset of the estate without providing any compensation. This would unjustly enrich one creditor to the detriment of other creditors and in disregard of the plan. And as a result, the bankruptcy court needs to retain jurisdiction over the EOF, which is property of the estate in the hands of the trustee to administer the plan. So for those reasons, the first from what's your response to the argument, however, that with regard to the first feature that we are in a post confirmation, probably post effective date situation. And therefore, the property is no longer that of the estate, but rather it's controlled by the liquidating trustee, Mr. Davis. The commission's argument has been that the estate has ceased to exist, and that's not correct. As Your Honor pointed out a moment ago in the NRA Resorts International case, the case does talk about the estate terminating, but points out very clear first that the courts don't apply that cessation literally. If you applied it literally, there could never be, for example, related to jurisdiction because there would never be jurisdiction of the bankruptcy court. And also under Section 1141B, if the plan or the liquidating trust agreement or the order provides for continuing jurisdiction, there is continuing jurisdiction, and that is the case here. So although it's the general rule that the bankruptcy state ceases to exist upon confirmation, there is the exception under 1141B, and that exception is met in this case. Well, now your opponent said that Resorts International prevents that outcome in the Third Circuit. Your Honor, I don't believe that's right. 1141B is the test that creates the exception. And again, this court in Resorts International stated that the estate terminates upon the effective date, but said a couple of things. First, that that isn't applied literally, because if it were, there would never be any post-confirmation jurisdiction of the district court, and that can't be right. There has to be post-confirmation jurisdiction in some instances. And also, 1141B is the exception to that, that if the plan says that there is continuing jurisdiction, that's the case. 1141 or 1142? I believe it's 1141B, Your Honor. For some reason, I thought it was 1142. Okay. Go ahead. And so for those reasons, NRA Resorts International doesn't preclude the claim here, because it's not, the cessation of the estate is not to be applied literally, and 1141B allows the plan and confirmation order to continue the bankruptcy court jurisdiction, which has been done in this case. If you look at the confirmation order, it specifically says, as of the effective date and pursuant to 1141B, all the assets in the liquidating trust shall continue. And if you look at the liquidating trust agreement, it says the trustee is the representative debtors of state. So under those provisions, it's clear that the exception in 1141B is true. Is there any case law that inverse condemnations actions are squarely in rem? I mean, the cases you cite are condemnation actions, which are admittedly different. And this seems to be, your suit is really for money damages, right? Your Honor, to the first part of that, we haven't found anything that specifically talks about an inverse condemnation case being per se in rem. And that's why we cited the condemnation cases. That was the closest authority that we were able to find. The inverse condemnation claim is seeking just compensation for the property and for special use of the property. But that still makes it ancillary to the bankruptcy court's in rem jurisdiction. And as the Supreme Court said in Katz, it needn't decide whether the claim is actually in rem or ancillary to. As long as it meets the ancillary to jurisdiction test, that is all that it needs. And here it does. The in rem jurisdiction of the bankruptcy court is over the estate. And there is a close nexus between the inverse condemnation claim in the estate because the proceeds from the inverse condemnation claim will be used by the trustee to distribute to the creditors under the liquidating trust. One part of Katz says sovereign immunity defense is waived in proceedings brought pursuant to laws on the subject of bankruptcy. Does this limit Katz to only statutes in the code or is the inverse condemnation claim here based on bankruptcy law or rather on state law? It's a state law claim, Your Honor, but I don't believe there's anything in Katz that would limit it, that would limit ancillary jurisdiction to just statutory claims. There's nothing that I read in Katz that would limit it. I think Katz would be broader than that. Is the inverse condemnation claim here only for post effective date use of the onshore facility? It's for the just compensation of the use of the facility. It was obviously filed two weeks after the effective date. But I don't believe it would be limited to only claims going forward, Your Honor. Of course, the commission was using the EOF under agreement under initially the reimbursement agreement and later under the gap agreement. And there was a large sum of money under those agreements that wasn't paid. And then the commission indicated it would pay no further monies for its use of the EOF. That's why Vinico had to had to terminate the gap agreement because that just converted it to a taking. And so that was what when they stopped paying, was it for amounts that were pre effective date of the confirmation of the plan? Yes, Your Honor, mostly. It would have only been two weeks that would have been applicable post effective date. All the rest of the monies would have been pre effective date. All right. If I could take you back to this point you made about 1141B and then I thought it was 1142B. 1141B says except as otherwise provided in the plan or the order confirming the plan, the confirmation of the plan bests all property of the estate in the debtor. That seems like your typical Chapter 11 reorganization. 1142A, A says notwithstanding anything applicable or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan should carry out the plan and comply with orders of the court. And B says the court may direct the debtor and any other necessary party to execute or deliver or join the execution of any instrument to affect the transfer of property dealt with by a confirmed plan and to perform any other act that is necessary for confirmation, confirmation of the plan. That seems to be, at least to me, to be more on point because this is a liquidating plan. I believe 1142 certainly is relevant for the purposes of the exception in 1141 is why I was citing the court to 1141B. And I believe that's referenced in NRA Resorts International. I think that exception is referenced there. Resorts refers to 1142B authorizes the bankruptcy court to direct the debtor and any other necessary party to perform any other act that is necessary for the confirmation of the plan. And it also refers to Bankruptcy Rules 3020D. I apologize, Your Honor. I thought it also referenced 1141B, but I think your point about 1141B is exactly right. That exception is created for the circumstance like a liquidating trust that we have here. Otherwise, it is simply a reorganization that will revest the property back in the debtor. And that's not what we have here, obviously, under this liquidating trust situation. 1141B allows the plan to confer otherwise, and the plan does that here. Okay. Do my colleagues have any questions of Mr. Harris? No, I don't. No. Anything you want to sum up with Mr. Harris? Your Honor, let me make one point under the state law sovereign immunity. Of course, we believe that the argument has been waived because it wasn't raised in the district court. But turning to the merits of that argument, the appellate's arguments on state law immunity have really shifted since their opening brief. In their opening brief, they were arguing immunity from liability, and now they're arguing immunity from suit. And there can't be state law immunity from suit. This court in Lombardo made clear that there's only one immunity from suit, and that's under the 11th Amendment. The 11th Amendment is immunity from suit, and the state law is immunity from liability. As previously discussed, Katz forecloses the 11th Amendment immunity from suit, so here there would be no immunity from suit. And I just wanted to point that out since that was raised in the reply brief, and we've not had a chance to address that. So that argument relates in some way to why you believe that even the state of California cannot posit sovereign immunity? That argument relates to the allegations of state law, of California law sovereign immunity. It's separate from the 11th Amendment, Your Honor. In their opening brief, they had said under California law there was immunity from liability. In the reply brief, they're now arguing that there's immunity from suit under California law. And in Lombardo, this court- In California courts only. Yes, Your Honor. There's no immunity from suit in federal court under state law. This court made that clear in Lombardo and basically said you don't get two bites at the apple.  And so just to point out that their argument has shifted since that was raised in the reply brief, and we haven't had a chance to address that point. Unless the court has any further questions, the lower courts properly determine that appellants are unable to assert sovereign immunity, and the judgment of the district court should be affirmed. All right, thank you very much. And we'll hear back on rebuttal from Mr. Rosenthal. Thank you. I have several- And again, I cannot see Mr. Rosenthal. Is there anything that can be done quickly? If not, go on ahead. I'm sorry, Judge, I'm not sure what I can do. I will let Lisa know once we're done with this case. Okay, thank you. I'm sorry, Your Honor, that you can't see me. But I hope you can hear me. I can hear you well. Thank you, Your Honor. I want to make several points. Number one, clarify something about the proof of claim. The proof of claim did include an element of $29 to $35 million, but that included both Platform Holly and the EOF. The EOF is really actually a very minor part of that. The bigger part is probably Platform Holly. But the bigger point is we vigorously dispute the notion that this claim is tied to any of the three elements that's core to a bankruptcy proceeding. This, unlike, contrary to my colleague here, this is not, this claim for inverse condemnation is not part of the gathering up of the estate. That has already taken place, and it's already been distributed. It's not ancillary to that. It's also not ancillary to the distribution of assets. That has already taken place. The assets have been distributed. But if more money is owed pre-effective date of the confirmation that has not been paid, and that money is brought in by the liquidating trustee, the liquidating plan means it goes out to the creditors, right? That's true of any money that the trust doesn't have to be posted. And that's what you said in Resorts International. Nearly increasing the estate is not an adequate connection to justify jurisdiction. That's all we're talking about here, Your Honor. This is not intimately tied to any of the three elements. It just isn't. We would ask the court, I would ask the court, because my opponent keeps asserting that this claim is somehow tied to the plan. It is not. If you look at the two pages he references, Joint Appendix 524 and 525, there is no tying of this, of whatever happens to the EOF to the plan. The plan distributed the EOF. It can be sold. And obviously any proceeds from that would be distributed. And it might include even the proceeds from a lawsuit. But it is not an intimate part of the plan. The plan, confirmation, plan, interpretation, all of the elements of the plan are completely independent. But my point is, I guess, fairly simple. If the debtor owned property. Yes. And that property was part of the debtor's estate. And then the debtor had an agreement. And it believed that in connection with that particular property, it was owed X amount of money. And the plan went effective. And the liquidating trustee, Mr. Davis, is saying, wait a minute, let me look back here. With respect to that property, there is an inverse condemnation claim. And you owe us money. And if I can get that money, I then distribute it to creditors, which is one of the essential purposes of bankruptcy. I'm kind of lost as to why Katz, supplemented by the understanding in Allen, doesn't cover that situation. Because, in essence, it would extend bankruptcy court jurisdiction forever. It would become limitless. As long as the trust existed. No, it's not limitless. Or something that happened in connection while that property was the property of the estate. Okay. Let me question the basic premise here. The trust, the state, did pay every dollar owed up to October 15th. It is simply incorrect that this claim relates to anything that occurred prior to October 15th. It's just wrong. That's not what Mr. Harris said. He said that there was money is not paid pre-effective date of the confirmation that Mr. Davis was suing about. Isn't that right? But if your honor, first of all, we disagree with Mr. Harris. It's not true. But your honor, this court can satisfy itself by simply looking at the complaint that was filed. There is nothing. There's not a word in that complaint about seeking money that preceded October 15th. It is for the period beginning with the termination of the agreement. And that's a fundamental fact that we disagree with them on, and which they are just plainly incorrect. And therefore, operating on the assumption, operating on that premise, this claim does not relate to anything that occurred prior to or during the course of bankruptcy proceeding. It is entirely post-bankruptcy. And the problem with their position and the problem with this position is that it would extend bankruptcy, jurisdiction, and most importantly, even more important than jurisdiction, our waiver of sovereign immunity indefinitely. I would point out, your honor, that the Supreme Court has directly addressed the issue of jurisdiction and sovereignty. It's not in the case we, but since it's been brought up, in Blatchford v. No Attack, which is 501 U.S. 775, the court expressly held that simply because Congress grants jurisdiction to hear a claim, it does not suffice to abrogate all defenses to that claim. They are analytically different. So this discussion of 1141B, 1141A, at most is jurisdictional, but it has the danger of essentially both extending the court's ability to abrogate our sovereign immunity for years, basically anything that relates subsequently. Isn't that, however, envisaged in the plan and in the language of the plan, that the plan's vesting provision is titled Merger of Non-Contributing Debtors into Vinoco, Vesting of Vinoco and Assets in Liquidating Trust, Dissolution of Vinoco and Elwood. And it goes on to provide that Davis can allow, settle, object to, or reconcile any claims against the contributing debtors' estates. There's other language like that. Doesn't that provide a basis for saying that, in fact, after the confirmation of the plan, that the trust assets continue to be part of the bankruptcy estate? I don't read it that way. But to the extent you do read it that way, it still is insufficient to waive our abrogation of sovereign immunity. We are applying a constitutional standard here. And the constitutional standard is it has to be ancillary to one of the three criteria. So even if you're correct, Your Honor, as a matter of jurisdiction, the test, which is the controlling test is, is this ancillary to one of the three aspects? And we contend clearly this lawsuit, which is all that matters, is not ancillary to gathering up assets, to the distribution, which has already taken place, or to the fresh start. It is simply not intimately tied to one of the three elements. If you're essentially done, I just want to ask Mr. Harris to come back and ask him a follow-up question. Can I respond on one issue, which is the state law immunity, since I did not touch on that? Sure. We'll go one minute more. Okay. Thank you. I appreciate the indulgence here. No problem. California state law immunity from liability, which is what the term is, includes its right to be free from suit other than in state courts. And that is all subsumed within the same process. We do not believe that, and of course, this couldn't have been dealt with in Lombardo. We don't believe that that immunity is coextensive with the 11th Amendment immunity, at least on the facts of this case. But the key to Lombardo is we treated immunity from liability as a defense and not a jurisdictional bar. But, Your Honor, let me point out in footnote 7, this court specifically held that the issue could be raised at any time, and therefore, this is a claim that could be resolved at this time. That's in footnote 7 in the last two sentences. We're holding that, relying on Adelman, that this could be heard at this time. Thank you for your indulgence. Thank you very much. And, Mr. Harris, we have just a follow-up question for you, if we could. Yes, Your Honor, are you able to hear me? Yes, sir. The question is, Mr. Rosenthal states that not a dime of pre-effective date money in connection with the inverse condemnation is sought. It's all for post-effective date claims. And you've said previously that's incorrect. And if so, how do you back that up? I believe that is incorrect, Your Honor. The letter terminating the GAAP agreement, it's JA-162, and it's dated August 22, 2018, indicates that payments are owed. And my understanding is that those were not paid prior to October 15th. Those continue to be outstanding because this is the time whenever the commission had said that it was going to quit payment. So that is my understanding of the record, Your Honor. And did the complaint that was filed on October 16 specifically seek to recoup the amounts not paid pre-October 16, or pre-effective date, which I guess was right around October 1st? The complaint makes reference on page 117 of the JA that the dispute traces back to before the debtors filed bankruptcy and has some references to that. And the prayer is general, Your Honor. The prayer is for just compensation for the taking. So I don't think it breaks out if there were some pre-October 15 versus post-October 15 claims. But it is clear that it was tracing back to the dispute back to the time around the petition. That's the JA-117. And in the GAAP agreement, JA-155, the parties had also recognized there was a dispute over the use of the property and the payments. That is my understanding of the record. All right. Thank you. What is your opinion on whether or not pursuant to the terms of the confirmation plan, the bankruptcy estate can continue as part of the assets managed post plan if it is so provided in the plan? Your Honor, it can. And that is provided in the plan, the confirmation order, and the liquidating trust agreement. The confirmation order at JA-459, the liquidating trust agreement at JA-303 and 04, and then the plan at pages 558 and 59. Those do allow for the continuing of the assets to be managed by the trustee. And that also is under 1141B. Thank you very much. Judge Porter, do you have any further questions? No, I don't. Okay. Thank you to all counsel for a very well presented oral argument. I would ask that a transcript be prepared of this oral argument and just split the cost down the middle. The California parties have, the Mr. Davis' group have. Thank you again, and we'll take the matter under advisement. Thank you.